# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERIC COLEY, | ) |
| | ) No. 12 CV 9526 |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| UNITED STATES OF AMERICA, | ) |

## OPINION AND ORDER

Before the Court is Petitioner Eric Coley's ("Coley") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Also before the Court is Coley's Motion to Perform an Evidentiary Hearing. For the following reasons, the motions are denied.

## I. BACKGROUND

On September 22, 2010, Coley was charged in a second superseding indictment with ten counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. On April 8, 2011, he pleaded guilty to one count of wire fraud, at which time the Government agreed to dismiss the remaining nine counts of wire fraud. Coley's single charge of aggravated identity theft, which carried a mandatory minimum consecutive sentence of two years' imprisonment, remained pending against him.

Prior to sentencing on the wire fraud count, the Government prepared a lengthy "Government's Version of the Offense," along with an eleven-page supplement specifically addressing the intended loss amount, to aid the Probation Department in the preparation of the Presentence Investigation Report ("PSR"). Although Coley and his counsel did not submit a "Defendant's Version of the Offense" to the Probation Department prior to the preparation of the PSR, they submitted a sentencing memorandum containing various objections to the PSR and

reserved any remaining arguments for presentment at the sentencing hearing. According to the PSR, the intended loss amount attributable to Coley was $1.8 million, with over 250 victims of the fraudulent scheme. With an offense level of 37 and a criminal history category of VI, this calculation yielded a sentencing guidelines range of 360 months to life imprisonment. The statutory maximum term of imprisonment, however, was 240 months.

The sentencing hearing was held on December 14, 2011. At sentencing, among other arguments, Coley's counsel contested the PSR's findings with respect to the loss amount and the number of victims. Ultimately, the Court found, as Coley had argued, that the loss amount was more than $400,000, but less than $1,000,000, and that the number of victims was more than 50, but less than 250. This resulted in a sentencing guidelines range of 210 to 262 months' imprisonment. In its discretion, however, the Court sentenced Coley to 144 months' imprisonment on the single count of wire fraud—a sentence which is more than thirty percent below the applicable guidelines range. The judgment of conviction was entered on December 29, 2011. Meanwhile, the aggravated identity theft charge against Coley remained outstanding.

Shortly thereafter, the Government indicated to Coley's counsel that it would be willing to dismiss the remaining count of aggravated identity theft in exchange for Coley agreeing to waive certain rights, including the right to appeal his sentence. Counsel states that he communicated this offer to Coley in person at his place of detention on December 29, 2011. The Government then emailed counsel the proposed agreement, which he forwarded to Coley on January 13, 2012 and discussed with him the following day by telephone. On January 9, 2012, the Government filed a motion to present and enter post-sentencing agreement, wherein it informed the Court of the agreement between the parties. Specifically, the Government agreed that it would not appeal Coley's below guideline sentence and agreed to dismiss the remaining

count against him, in exchange for Coley's waiver of his appellate and collateral attack rights. The agreement was to be memorialized in a document to be signed by all parties on February 1, 2012.

In the instant motion, Coley alleges that the waiver agreement was never discussed with him prior to the hearing on February 1, 2012. Nevertheless, Coley was present when the parties appeared before the Court on February 1, 2012. The agreement, which pertained to both Coley and his twin brother and co-defendant Derrick Coley, was signed by the Government, both defendants, and their respective attorneys. At the hearing, the following discussion took place between Coley and the Court:

> THE COURT: Okay. Mr. Coley, did you hear what your attorney said? That is to say that on your behalf he has reached an agreement with the government?
> THE DEFENDANT: Correct.
> THE COURT: Did you hear all of that?
> THE DEFENDANT: Um-hum.
> THE COURT: Are you in agreement with your attorney on this matter?
> THE DEFENDANT: Um-hum. Yes.
> THE COURT: In your own words what have you agreed to do?
> THE DEFENDANT: The remaining charges would get dropped not to appeal the sentence.
> THE COURT: That's it in a nutshell. All right. The Court accepts the agreement between the United States and Eric Coley.

Gov't Resp. to § 2255 Pet. Ex. D, at pp. 3:20-4:10. The Court thereafter granted the Government's oral motion to dismiss the remaining charge against Coley pursuant to the waiver agreement. As relevant here, the agreement provides:

> 5. Defendants Eric Coley and Derrick Coley are each aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendants Eric Coley and Derrick Coley each knowingly waive the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any order of restitution or forfeiture, in exchange for the concession made by the United States in paragraph 6 of this Agreement. In addition, each defendant also waives his right to challenge his conviction and sentence, and the

3

manner in which the sentence was determined, and his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

6. In exchange for the concessions made by defendants Eric Coley and Derrick Coley in paragraph 5 of this Agreement, the United States hereby waives the right to appeal the sentence imposed by the Court as to defendants Eric Coley and Derrick Coley, and agrees to dismiss Count 6 of the second superseding indictment.

. . . .

9. Defendants Eric Coley and Derrick Coley each acknowledge that he has read this Agreement and carefully reviewed each provision with his attorney, and further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

Gov't Resp. to § 2255 Pet. Ex. A, ¶¶ 5, 6, 9.

Despite his agreement to waive his right "to challenge his conviction and sentence, and the manner in which the sentence was determined, and his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under [§] 2255," id. ¶ 5, Coley filed the instant § 2255 motion on November 29, 2012.[1] He has since amended and supplemented his petition to add two additional grounds for

---

[1] The Court notes that the waiver agreement also contains the following provision:
> Defendants Eric Coley and Derrick Coley each understand that his failure to abide by any term of the Agreement is a violation of the Agreement. Defendants each further understand that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement or require defendant's specific performance of this Agreement.

Gov't Resp. to § 2255 Pet. Ex. A, ¶ 7.

4

relief. Additionally, Coley seeks an evidentiary hearing, "[t]o decide petitioner's allegation on [sic] ineffective assistance of counsel claim, which would be a good way to ascertain why counsel would have petitioner waive his appeal rights when counsel knew petitioner wanted to exercise his rights to appeal." Pet'r's Mot. to Perform Evidentiary Hearing 1. The motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. This is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a petitioner is able to successfully assert the aforementioned grounds, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

Post-conviction relief under § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In deciding a § 2255 motion for post-conviction relief, courts "review evidence and draw all reasonable inferences from it in a

light most favorable to the government." Carnine v. United States, 974 F.3d 924, 928 (7th Cir. 1992) (citations omitted).

## B. Ineffective Assistance of Counsel: Voluntariness of Waiver

In total, Coley alleges twelve different grounds for relief, all couched in terms of ineffective assistance of counsel. Specifically, Coley alleges that his § 2255 petition should be granted because he received ineffective assistance of counsel in violation of his Sixth Amendment rights when: (1) his attorney failed to file a notice of appeal or an appeal; (2) his attorney failed to object to the calculation of the number of victims contained in the PSR; (3) his attorney failed to file a motion for downward departure at sentencing which Coley had drafted; (4) his attorney failed to file a "Defendant's Version of the Offense" with the Probation Department for purposes of preparing the PSR; (5) his attorney failed to file the proper paperwork with respect to two of his vehicles; (6) his attorney failed to seek the appointment of a computer forensics expert; (7) his attorney failed to show at sentencing that the Government used perjured information in its arguments against Coley's acceptance of responsibility; (8) his attorney failed to file the proper paperwork seeking the return of certain property owned by Coley after sentencing; (9) his attorney failed to inform the Court at sentencing that Coley wished to challenge all of the forfeiture allegations and claims; (10) his attorney failed to carefully review the terms of the waiver agreement with him, thereby making his waiver involuntary; (11) his attorney coerced him to waive his appellate rights without consulting with him first; and (12) his attorney failed to raise an Ex Post Facto Clause challenge pursuant to Peugh v. United States, 133 S. Ct. 2072 (2013), as it related to his sentencing guidelines range based on the number of victims.

6

First, the Court addresses Coley's ineffective assistance of counsel arguments which seek to challenge the voluntariness or validity of his waiver agreement contained in his tenth and eleventh proposed grounds for relief.

"The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009) (citations omitted).

In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citation omitted)). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" Atkins v. Zenk, 667 F.3d 939, 944-45 (7th Cir. 2012) (quoting Strickland, 466 U.S. at 689) (alteration in original). In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for

7

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

With respect to the waiver agreement, courts "will enforce a[n] . . . appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." United States v. Blinn, 490 F.3d 586, 588 (7th Cir. 2007) (citing United States v. Jemison, 237 F.3d 911, 917 (7th Cir. 2001)).

Coley argues that "Lawyer J. Beal, never carefully reviewed the terms of the waiver agreement, just told me that on the date, I signed on February 1, 2012, that it was in my best interest and this was the quickest way to get out of the Jerome Combs Detention Center." Petr.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody 14. He further states that "he involuntarily waived his rights to appeal, because his counsel . . . induced and coerced [him] in doing so. Counsel negotiate[d] an agreement with the government to have defendant waive his rights if the government dismiss[ed] defendant['s] pending charge . . . without consultation [sic] with defendant about this unknown discussion and agreements with counsel and the Government." Mot. to Amend Pet'r 2255 Pet. 2. In sum, Coley argues that because his attorney allegedly did not discuss the waiver agreement with him prior to the day of the hearing when he signed it, the waiver was involuntary due his counsel's ineffective assistance.

The Government, on the other hand, contends that the record overwhelmingly supports its position that Coley knowingly and voluntarily waived his appellate and collateral attack rights after being fully advised of his rights by his attorney. In support, the Government attaches an affidavit from Coley's counsel. Counsel states that he discussed the Government's offer to dismiss the charge for aggravated identity theft in exchange for Coley's appellate waiver with

him in person at the Kankakee jail on December 29, 2011. Counsel also states that on January 13, 2012, he mailed Coley a copy of the Government's motion informing the Court of their deal and setting the date for hearing. The following day, on January 14, 2012, counsel states that he carefully reviewed the terms of the waiver agreement with Coley, including the rights that he would be giving up, over the telephone and told him, *inter alia*, that "it was in his best interest to sign the agreement rather than risk trial on Count Six." Gov't Resp. to § 2255 Pet. Ex. C. at ¶ 12. Coley denies that these discussions took place and maintains that he was unaware of the agreement with the Government until February 1, 2012.

Nevertheless, Coley was present at the hearing on February 1, 2012 where the Government and his counsel presented the agreement to the Court. During the hearing, the Court specifically asked Coley if he heard what the Government said and if he understood what agreement was being made. Coley said yes multiple times, never expressed a reservation against signing the agreement, and, when asked to put the agreement in his own words, Coley explained that "[t]he remaining charges would get dropped not to appeal the sentence." Gov't Resp. to § 2255 Pet. Ex. D, at pp. 4:6-4:7. Furthermore, Coley signed the agreement, which specifically provided that he "acknowledge[s] that he has read this Agreement and carefully reviewed each provision with his attorney, and further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement." Gov't Resp. to § 2255 Pet. Ex. A, ¶ 9. Accordingly, the record shows that Coley knowingly and voluntarily waived his appellate and collateral attack rights.

In any event, Coley fails to establish any prejudice from his attorney's alleged failure to discuss the waiver agreement with him prior to the date of the hearing. To establish prejudice, Coley must show that there is "a reasonable probability that, but for counsel's unprofessional

9

errors, the result of the proceeding would have been different" and a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Ruhl v. Hardy, No. 12-2515, 2014 U.S. App. LEXIS 3432, at *16 (7th Cir. Feb. 21, 2014) (internal quotation marks and citations omitted).

Coley states that his time in which to appeal his sentence on the charge of wire fraud expired on December 28, 2011—not so. The order of judgment and conviction was not entered until December 29, 2011. Thus, Coley had fourteen days thereafter to file a notice of appeal; and then Coley could have sought an extension for an additional thirty days based upon a finding of excusable neglect or good cause, which would have placed his deadline to appeal well beyond the hearing date on February 1, 2012 when he signed the agreement waiving his rights to appeal and to file post-conviction petitions. See Fed. R. App. P. 4(b)(1), (4). Nonetheless, based on his misunderstanding of the law, Coley argues that his counsel "had me to believe my direct appeal had been filed with The Clerk of Courts and I was only there to have my other pending charge of [aggravated identity theft] dropped against me." Def. Resp. to Gov't Resp. to 2255 Pet. 15. This argument is without merit. The record shows that Coley understood and voluntarily accepted the substance of the agreement on the day on which he signed it—irrespective of what counsel did or did not say to him on prior occasions. Indeed, by signing the agreement, Coley avoided prosecution for his aggravated identity theft charge which carried a mandatory minimum consecutive sentence of two years' imprisonment. Furthermore, Coley states that it was his desire to leave the custody of the county jail where he was being detained as soon as possible—a goal which this waiver agreement achieved because he would no longer have to await trial on the remaining charge and he could move on to his placement within the Federal Bureau of Prisons. On the date of the hearing, Coley told the Court that he understood that the agreement meant that

"[t]he remaining charges would get dropped not to appeal the sentence." Gov't Resp. to § 2255 Pet. Ex. D, at pp. 4:6-4:7. Based on his statement, which he does not refute, he cannot now argue that his lawyer "tricked" him into believing that an appeal had already been filed (or that the time for appeal had expired) and that the Government still somehow gratuitously agreed to dismiss the remaining charges against him without any concession on his part. Simply put, the Government would not have agreed to dismiss the remaining charge in exchange for his appellate waiver if such waiver was meaningless. He told the Court that he agreed "not to appeal the sentence," and that is precisely what he did by signing the waiver agreement. Id. Therefore, Coley suffered no prejudice; there is simply no evidence to suggest that Coley did not knowingly and voluntarily enter into the waiver agreement in exchange for the dismissal of his remaining charge. Cf. Nunez v. United States, 546 F.3d 450, 456 (7th Cir. 2008) ("Once a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver. The regimen of Strickland applies: the defendant must show both objectively deficient performance and prejudice. Unless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain."). Nor was counsel's performance deficient. Indeed, the record shows that he made sound strategic decisions to achieve the best results for his client. See Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010) ("[T]rial strategies are generally left to the discretion of counsel and second-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel."). Accordingly, Coley's ineffective assistance of counsel claim fails.

Because the Court enforces the valid waiver agreement, it therefore declines to address Coley's remaining arguments which are barred by the express terms of the waiver agreement.[2] In addition, because "'the files and records of the case conclusively show that the prisoner is entitled to no relief,'" Coley's motion for an evidentiary hearing is denied. Lafuente v. United States, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)).

## III. CONCLUSION

For the foregoing reasons, Coley's § 2255 petition and motion for an evidentiary hearing are denied. A Certificate of Appealability is denied pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 27, 2014

---

[2] The Court notes that, among the arguments barred by the waiver agreement, is Coley's contention that his attorney was ineffective for failing to raise a Peugh challenge at sentencing because, pursuant to the waiver agreement, "prior to the filing of defendant's request for relief," Peugh was not "expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission." Gov't Resp. to § 2255 Pet. Ex. A, ¶ 5.

12